United States District Court
Southern District of Texas
**ENTERED**
March 21, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESENNIA RIVERA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-632 |
| | § | |
| WYNDHAM HOTEL MANAGEMENT, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Wyndham Hotel Management, Inc.'s ("Wyndham") motion for summary judgment. Dkt. 22. Having considered the motion, response, reply, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED.

### I. PROCEDURAL BACKGROUND

This lawsuit is an employment retaliation case filed under Chapter 21 of the Texas Labor Code. Plaintiff Jesennia Rivera alleges that she was unlawfully retaliated against when her employment at the Wyndham Houston Medical Center Hotel was terminated. Dkt. 1. Rivera originally filed this case on February 4, 2015, in the 151st Judicial District Court of Harris County, Texas. Dkt. 1, Ex. 1 at 6. On March 10, 2015, Wyndham removed the lawsuit to this court based on diversity jurisdiction. Dkt. 1. On November 6, 2015, Wyndham filed a motion for summary judgment on Rivera's retaliation claim. Dkt. 22. On November 25, Rivera filed a response to the motion (Dkt. 24), to which Wyndham filed a reply (Dkt. 25).

### II. FACTS

Rivera began working for the Wyndham in St. Thomas in 2010. Dkt. 24 at 9. On August 12, 2013, Rivera transferred locations and began working as an assistant guest services manager at

the Wyndham in the Texas Medical Center in Houston. *Id*. Alfredo Matos, the general manager at the hotel, made the decision to hire Rivera. Dkt. 22 at 9. Rivera was responsible for assisting Juan Rodriguez, the guest services manager, in supervising front desk employees and handling guest concerns. *Id*. The assistant guest services manager position is an exempt, salaried managerial position, and Rivera was the most senior manager on the property at most times during her shifts. *Id*. at 10.

The evidentiary record shows that, shortly after Rivera began working for the Wyndham in Houston, several employees complained about Rivera, and management quickly became concerned that Rivera lacked the skills to be an effective manager. On September 10, 2013, Matt McCain, a member of the front desk staff, complained to Rodriguez that Rivera had improperly demeaned him after he mistakenly walked guests to a nearby hotel on an evening when there were rooms available at the Wyndham. In an email dated September 10, 2013, Juan Rodriguez (the guest services manager) reported the complaint to Alejandra Vega (the human resources manager) and Alfredo Matos (the general manager), indicating that McCain complained that Rivera was disrespectful to staff and that she failed to assist the staff because she spent time in the back office texting and talking on the phone while her staff struggled at the front desk. Dkt. 22, Ex. 10 at 2. In response to the same incident, Vega also documented a conversation he had with McCain in which McCain reported that Rivera was rude and demeaning to her staff. Dkt. 22, Ex. 11. A few days later, McCain submitted his resignation, along with a letter stating that "[i]t has been a pleasure to work with all of the staff here at this hotel. Except for Jesennia Rivera." Dkt. 22, Ex. 12 at 2. A few weeks later, Rodriguez and Vega spoke to another member of the front desk staff, Chimira Richards, after Rivera reported that Richards had left her shift early. According to Vega's notes (dated

2

September 27, 2013), Richards reported to Rodriguez and Vega that Rivera was rude to her and that she spent too much time in the back office. Dkt. 22, Ex. 14 at 2. Vega's notes also state that Rodriguez and Vega counseled Rivera and instructed her to spend more time at the front desk assisting her staff, to watch her tone of voice, and to avoid being rude and demeaning. *Id*. There are also a number of emails (September through November) between Rivera and various hotel staff members which indicate that Rivera had problems with checking guests in, properly running guests' credit cards, and following hotel cash procedures. Dkt. 22, Exs. 16, 17, 18.

According to Rivera, Alex Mendoza, the hotel bus driver, began sexually harassing Rivera beginning on October 22, 2013. Dkt. 24 at 9. Mendoza was an hourly, subordinate, non-managerial employee, with no authority over Rivera to discipline her or terminate her employment. Dkt. 22, Ex. 2 at 8:3-14 (Rivera's Dep.). Mendoza allegedly put his hand around Rivera's waist on two separate occasions, looked at her in ways that made her uncomfortable, and constantly asked her out on dates in front of other employees. Dkt. 24 at 9. On or about October 22 and November 4, 2013, Rivera told Mendoza to stop the inappropriate behavior. *Id.* Rivera claims that she complained to Vega about Mendoza's alleged behavior on November 4, 2013, and informed Vega that she verbally counseled Mendoza regarding his inappropriate behavior.[1] Dkt. 22, Ex. 2 at 9: 2-11 (Rivera's Dep.).

On November 8, 2013, Mendoza submitted a letter to Wyndham management complaining that Rivera often left the front desk unattended, frequently used Facebook during work hours, sat in the back office using her cell phone, made inappropriate remarks to guests, and on one occasion left

---

[1] Wyndham denies Rivera's assertion that she complained to Vega about Mendoza's behavior on November 4 (before a performance write up was delivered to her on November 8). For purposes of this motion, the court will credit Rivera's testimony on this fact issue.

3

the property for an hour to get fake eyelashes. Dkt. 22, Ex. 15. On that same day, Rivera received a formal written performance warning from Wyndham Management. Dkt. 22, Ex. 22. The warning checked the "Performance Below Expectation" box and noted, among other things, the following issues with Rivera's performance:

- Rivera's improper use of her personal phone and sending text messages in front of other Hotel employees.

- Rivera making improper negative comments about the hotel and her decision to transfer to the hotel.

- Rivera leaving the property without notifying her staff.

- Rivera leaving the front desk unattended.

- Negative feedback from guests regarding her attitude, service, and rudeness.

- Rivera's difficulty making decisions that a manager on duty should be able to do on her own.

- Inability to provide proper directions and information regarding the area, knowledge of front desk is not where it should be at this time.

- Discussing disagreement of her schedule with other associates instead of a manager.

*Id*. at 2.

The performance warning further advised that she must show improvement in her management of the front desk, that "negative comments to associates must be stopped immediately," that she must show professionalism and a proper attitude during interactions with guests, and that "job related issues must be addressed with her manager instead of her team members." *Id*. Rivera acknowledged receiving the written warning and wrote in the "Associate's Comments" section of

4

the warning: "The next time I come to my RM office is for better performance. I will work on every detail on this write up." *Id*.

According to Vega's notes, a few days later, Rivera met with Vega and claimed her performance write-up was "unfair." Dkt. 22, Ex. 23 at 2. Vega's notes also indicate that after Rivera received the written warning, Rivera held a meeting with her staff to ask if they felt she was an ineffective manager for the reasons stated in the write-up. *Id*. Vega criticized Rivera for exercising poor judgment by putting her subordinates on the spot and for sharing confidential information with her staff. *Id*. At the end of Rivera's meeting with Vega, Rivera again assured her that she would improve her performance. *Id*.

On December 6, 2013, Rivera reported to Vega that Mendoza was rubbing his shoulders against the female associates, making inappropriate comments, and calling one of the other associates "sweetie, pretty, and sometimes other things." Dkt. 22, Ex. 24. Both Rivera and Vega met with Mendoza to advise him that the complained-of conduct was not acceptable. *Id*. Both parties agree that, after this meeting, Mendoza stopped acting inappropriately with female employees. Dkt. 22, Ex. 2 at 14:1-18 (Rivera's Dep.). However, according to Rivera, after this meeting Mendoza increased his efforts to retaliate against Rivera by acting hostile towards Rivera and some other employees. *Id*. at 14:19-25.

At the end of November, Rodriguez completed Rivera's 2013 performance review and development plan. Dkt. 22, Ex. 25. As Rivera points out, the 2013 evaluation does include some positive feedback. However, in almost every performance category, Rivera received negative feedback or areas where she needed improvement. Some examples include:

5

- "Jesennia held control payroll expenses by monitoring staff hours. I would like for Jessennia to concentrate more on improving revenues by upselling rooms" and "Jessennia was asked to assist in developing an upgrade program, the program has not [been] done yet, I would like to see Jessennia work and complete the project."
- "Jessennia does a good job with the guest[s] most of the time, I would like to see Jessennia be more consistent in her interactions with the guest[s]."
- "Jessennia had some challenges at the beginning and although she is improving I would like to see her be more proactive to anticipate the needs of our guest[s], staff, and management."
- "Jessenia does a good job at the basic front desk responsibilities, I would like to see her more involved in other aspects such as, scheduling, counseling, payroll monitoring, rooms inventory, P.O.'s and any other area that she feels she needs to improve."
- "Jessennia should become more familiar with aspects and departments in the hotel to be able to be the point of contact and have more efficient communication within department[s] across the hotel."
- "Jessennia needs to take the time to evaluate situations and try to [make] decisions on her own in situation[s] that don't require upper management approval."
- "I would like to see better and more efficient written and verbal communication from Jessennia. I would like to see her be more tolerant and more approachable with her tone and words to her associates."

- "Jessennia needs to be more open to constructive criticism and understand that there is always an opportunity to learn and grow from it."

*Id*. at 2-7.

At the end of the review, Rivera received an overall rating of "Low Contributor," which is defined in the review as: "Associate does not achieve the responsibilities of the position and the goals of the Performance and Development Plan. Associate does not perform at the same level of peers. Immediate improvement is required as specified in a corrective action plan." *Id*. at 2, 8.

Matos testified that Rivera's performance issues continued throughout the rest of 2013 and into 2014 and that management had numerous discussions where Rivera was told that she needed to improve in several areas. Dkt. 22, Ex. 3 at 13:7-24 (Matos's Dep.). Despite these discussions, hotel employees and guests continued to complain about Rivera's demeanor and behavior. According to Armando Galdamez, a hotel bartender, on February 9, 2014, a guest leaving the hotel reported to him that everyone who worked at the hotel was very friendly, except for Rivera, who he claimed had been rude to him. Dkt. 22, Ex. 26 at 2.

On February 12, 2014, Mendoza signed another statement criticizing Rivera for declining his request to assign a driver to take guests off the hotel property and for expressing her displeasure with him in the main lobby of the hotel. Dkt. 22, Ex. 27 at 2. Hotel management later discovered that Rivera had proceeded to complain about Mendoza to the hotel bartender, Galdamez. Dkt. 22, Ex. 28 at 2. That same day, both Vega and Rodriguez signed a personnel action form for Rivera. The personnel action form states at the bottom of the page that Rivera would receive a 3% merit increase in 2014. Dkt. 24, Ex. 3 at 16. However, Wyndham claims that Rivera never actually received the 3% merit increase, claiming that this was merely an error on the form. Indeed, Matos's affidavit

7

states that "Rivera did not receive a salary increase in 2014 on account of her 'low contributor' performance rating." Dkt. 25, Ex. 1 at 3-4. Additionally, Wyndham has produced a document entitled "Annual Merit Statement" for Jesennia Rivera, which states that Rivera's 2014 salary was not increased. Dkt. 25, Ex. 1 at 2.

Rivera claims that on January 31, 2014, she discovered Mendoza's plan to sabotage her employment after speaking with another employee—Juan Chalita—who allegedly told her that Mendoza planned to spread lies about Rivera in order to get her fired. Dkt. 22, Ex. 2 at 33:8-34. Rivera immediately went to Vega and reported what Chalita had told her. Dkt. 22, Ex. 29 at 6. According to Rivera, Vega told her to either let it go or resign. *Id*.

In early February, Rivera decided that she wanted to transfer locations and work at a different Wyndham hotel. To that end, Rivera contacted the head of corporate human resources, Kelli Joseph, who advised Rivera to write a rebuttal to the November performance write-up because it prevented her from transferring locations. Dkt. 22, Ex. 2 at 20:7-19. Accordingly, on February 18, 2014, Rivera prepared a rebuttal letter and sent it to the corporate human resources department, Vega, and Matos. Dkt. 22, Ex. 29. According to Rivera, she wrote the letter in order to convince Wyndham to remove her written performance warning so that she could qualify for an intra-company transfer to another property, as Wyndham policy prohibited the transfer of employees with active performance warnings. Dkt. 22, Ex. 2 at 19:2-25. In the letter, Rivera attempts to explain or deny each area of criticism contained in her performance warning and briefly explains her tense relationship with Mendoza. Dkt. 22, Ex. 29. On the same day she wrote the letter, she had a conference call with corporate human resources, Vega, and Matos, which was followed up with several email exchanges between Rivera and various Wyndham managers. Dkt. 22, Ex. 2 at 22:19-

25. Consequently, on February 23, 2014, Rivera sent an email to Kelli Joseph and Lisa Dusset, complex director of human resources, stating (among other things) that she felt her performance was being unfairly criticized and that she intended to "go to [the] EEOC." Dkt. 22, Ex. 31.

According to Wyndham, throughout February of 2014, Matos, Vega, and other hotel managers continued to counsel Rivera in an effort to help her improve her performance and management skills. Dkt. 22 at 16 (citing the affidavits of Matos and Vega). On February 20, Stephanie Boyles, Wyndham's director of finance, reported observing Rivera at the front desk with her head down during a very busy time in which there was as long line of guests waiting to be helped:

> During my time in the lobby last night, there was a steady flow of guests coming to the desk to check in. One thing I noticed is that [Rivera] was looking down and working on her computer as the lines were getting longer and longer with approaching guests. There was no one in front of [Rivera] due to the fact that she obviously looked like she was busy working on the computer. I saw guests looking at her, waiting for her to acknowledge they were standing in line, and she had no one in her line, yet she never looked up and invited any of the impatient guests to her line.

Dkt. 22, Ex. 30 at 2.

On February 26, 2014, Erin Kohlweck, hotel director of sales and marketing, reported to Matos, Rodriguez, and Vega that Rivera had failed to call other local hotels to promote available rooms at the Wyndham, as required. Dkt. 22, Ex. 32. Kohlweck reported that Rivera was visibly irritated with her for asking her if she made the phone calls. *Id*. at 2. On February 27, 2014, another hotel employee asked Rivera for a parking coupon to move his car to the back parking lot to make more room for guest parking. Dkt. 22, Ex. 33 at 2. The employee reported to management that Rivera was dismissive and told him she did not know of any such practice. *Id*. The employee resorted to obtaining the parking tickets from Rodriguez. *Id*.

9

On February 28, 2014, Matos terminated Rivera's employment. Dkt. 22, Ex. 5 at 3. In his affidavit, Matos stated that "[b]ased on the continued and repeated feedback I received from other employees about Ms. Rivera's performance, as well as my own personal observations with regard to her performance, I made the decision to terminate Ms. Rivera's employment." *Id*. He further stated that his decision to terminate Rivera "had nothing to do with a complaint she made in December 2013 with respect to an hourly employee on the hotel's bell staff" and that he "never considered in any way the fact that she had referenced an alleged intent to file a charge with the EEOC." *Id*. at 3-4. However, Wyndham admitted in its sworn answers to interrogatories that it relied, in part, on Mendoza's complaints regarding Rivera's performance issues when it decided to terminate Rivera. Dkt. 24, Ex. 5 at 6.

### III. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

# IV. LAW & ANALYSIS

## A. Legal Standard for Retaliation Claims

As Wyndham points out, the *McDonell Douglas* burden-shifting framework applies to this case. *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (applying the burden-shifting framework to a Title VII unlawful retaliation case). Under the burden-shifting framework, Rivera must first make a *prima facie* showing that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *See King v. Sanderson Farms, Inc.*, No. CIV.A. H-11-4488, 2014 WL 1315562, at *8 (S.D. Tex. Mar. 31, 2014) (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)). If Rivera meets this requirement, the burden shifts to Wyndham to demonstrate a legitimate, non-retaliatory reason for its termination of Rivera's employment. *Id*. Rivera then assumes the burden of presenting proof that Wyndham's stated reason for termination is pretextual. *Id*.

Wyndham argues that Rivera's claim under the Texas Labor Code fails as a matter of law because (1) Rivera cannot establish a *prima facie* case for retaliation because Rivera did not engage in statutorily protected activity when she complained about Mendoza's alleged actions toward her and because there is no causal connection between Rivera's termination and any alleged statutorily protected activity; (2) Wyndham has produced a legitimate, non-retaliatory reason for Rivera's termination; and (3) Rivera cannot establish that Wyndham's reasons for terminating her employment are unworthy of credence and pretextual.

## B. Rivera's *Prima Facie* Case of Retaliation

Wyndham asserts that Rivera cannot meet the first and third *prima facie* elements. Dkt. 22 at 20. With respect to the first element, Wyndam claims that Rivera did not engage in a protected

11

activity when she (1) complained about Mendoza's alleged sexual harassment, (2) complained about management's alleged harassment, and (3) informed Human Resources Corporate that she was taking her complaints to the Equal Employment Opportunity Commission ("EEOC"). Dkt. 22 at 20. However, because the court finds that Wyndham has satisfied its burden under step two and Rivera fails to meet her burden of showing pretext under step three of the *McDonell Douglas* framework, the court need not decide whether Rivera engaged in a protected activity. Further, because "[t]he causal standard at the *prima facie* stage is much less stringent than the but for standard required to show pretext in the later analysis," the court will address causation under the pretext analysis. *Devere v. Forfeiture Support Assocs., L.L.C.*, No. CIV.A. H-12-3234, 2014 WL 4471392, at *4 (S.D. Tex. Sept. 10, 2014) (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001)). Therefore, the court will assume, without deciding, that Rivera has made a *prima facie* case under the first step of the *McDonnell Douglas* framework.

### C. Wyndham has Presented a Legitimate, Non-Retaliatory Reason for Termination

For step two, Wyndham's "burden is one of production, not persuasion; it can involve no credibility assessment." *King*, 2014 WL 1315562, at *5 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097 (2000)). Here, Wyndham has clearly met its burden by producing a significant amount of evidence to show that Rivera was terminated for poor performance. "Poor work performance is a legitimate, non-discriminatory reason for discharge." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). There is an overwhelming amount of evidence from a variety of sources to support Wyndham's claim that it terminated Rivera's employment because of her performance issues. Because Wyndham has successfully articulated a legitimate reason for Rivera's termination, the burden now shifts back to Rivera to show an issue of fact as to whether Wyndham's reasons are a pretext for retaliation. "To show pretext,

plaintiff must produce substantial evidence to create a reasonable inference that the proffered reasons are false or unworthy of credence." *King*, 2014 WL 1315562 (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001)).

### D. Rivera Cannot Establish that Performance Issues are a Pretext for Retaliation

"[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. On this prong of the analytical framework, Rivera bears the burden of "proving that [Wyndham's] proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citations and internal quotation marks omitted). "This burden is more stringent than that required of [Rivera] at the *prima facie* stage," and requires her to prove her termination "would not have occurred 'but for' the protected conduct." *Devere*, 2014 WL 4471392 at *5.

In this case, given that Rivera was both hired and fired by Matos, Rivera faces an even higher burden than normal because Wyndham is entitled to the "same-actor" inference. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (explaining that the "same actor doctrine" reasons that "from the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job"); *Howard v. United Parcel Serv., Inc.*, No. 3:09-CV-2074-K, 2011 WL 195682, at *9 (N.D. Tex. Jan. 18, 2011) (holding that same-actor inference applies to retaliation claims just as it does to discrimination claims). In order to overcome the same-actor inference, the plaintiff must present evidence of "sufficiently egregious" facts. *Brown,* 82 F.3d at 658*; see also Raggio v. Parkland Mem'l Hosp.*, No. CA 3-95-CV-0680-R,

1997 WL 135662, at *5 (N.D. Tex. Mar. 12, 1997) (granting summary judgment for employer where the plaintiff failed to submit sufficient evidence of sufficiently egregious facts to overcome the inference in a retaliation claim). In this case, no reasonable juror could conclude that there were sufficiently egregious facts to rebut the inference.

One way to rebut the same-actor inference is "by showing that a non-decisionmaking employee was biased and inappropriately influenced the decisionmaker's employment decision under a cat's paw theory of liability." *Stubbs v. Regents of Univ. of Cal.*, No. CIV. S-06-1 KLL/DAD, 2007 WL 1532148, at *12 (E.D. Cal. May 25, 2007). In this case, Rivera relies on the cat's paw theory of liability because the alleged harasser (Mendoza) was a subordinate without any authority to discipline or terminate Rivera. Dkt. 22, Ex. 2 at 23:3-14 (Rivera Dep.); *see Parada v. Great Plains Int'l of Sioux City, Inc.*, 483 F. Supp. 2d 777, 796 n.6 (N.D. Iowa 2007) ("A 'subordinate,' . . . lacks the capacity to engage in quid pro quo harassment of a 'supervisor,' because the subordinate ordinarily lacks the capacity to grant or withhold a benefit of employment based on the supervisor's acquiescence in or repulsion of sexual advances.").

Rivera asserts that Matos ultimately decided to discharge Rivera based solely on Mendoza's alleged retaliatory animus. She claims that Mendoza somehow commanded a conspiracy in which Matos was directed and influenced to discharge Rivera in retaliation for asking Mendoza to stop his behavior. Under this "cat's paw" theory, any retaliatory animus of Mendoza may only be imputed to Matos, the undisputed decision-maker with respect to Rivera's employment, if Rivera can prove that Matos merely "acted as a rubber stamp or the 'cat's paw,' for [Mendoza's alleged] prejudice." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226-27 (5th Cir. 2000). This theory requires the plaintiff to present "evidence sufficient to establish two conditions: (1) that a co-worker exhibited

[retaliatory] animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decision maker.'" *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004).

The court finds Rivera's "cat's paw" theory unpersuasive because (i) there is no evidence to support the contention that a member of the hourly bell staff (Mendoza) possessed the leverage to influence Wyndham's General Manager (Matos) to discharge Rivera in retaliation for her complaint that Mendoza harassed her; and (ii) the summary judgment evidence establishes that Matos personally observed Rivera's poor performance and was notified by multiple other employees of her performance issues. Even without Mendoza's complaints about Rivera, Wyndham has presented significant evidence that Rivera's poor performance was widely observed at the hotel throughout the entire duration of her employment. Several managerial-level and hourly employees observed and documented her performance problems almost immediately after she began work at the hotel in September of 2013. *See, e.g.*, Dkt. 22, Ex. 10 at 2 (Matt McCain complaining to Rodriguez that Rivera had improperly demeaned him after he mistakenly walked guests to a nearby hotel on an evening when there were rooms available at the Wyndham); *see also* Dkt. 22, Ex. 14 at 2 (Vega noting that an employee at the front desk, Chimira Richards, complained about Rivera being rude to her and spending too much time in the back office). Many hotel co-workers continued to report and record Rivera's performance problems through her termination in February 2014. *See* Dkt. 22, Ex. 26 at 2 (bartender Armando Galdamez stating that a hotel guest reported to him that Rivera had been very rude to him); *see also* Dkt. 22, Ex. 30 at 2 (finance director Stephanie Boyles reporting that she observed Rivera at the front desk with her head down during a very busy time in which there was a long line of guests waiting to be helped). Other than Matos's admission that he relied, in part, on Mendoza's complaints in reaching his decision to terminate Rivera, there is no evidence to

support the contention that Matos simply rubber-stamped any alleged retaliatory animus held by Mendoza.

Even without applying the same-actor inference, Rivera cannot meet her evidentiary burden of showing pretext. To satisfy this "but for" requirement, Rivera must provide "'[p]roof that the defendant's explanation is unworthy of credence.'" *Id.* (quoting *Pennington v. Tex. Dep't. of Family & Protective Servs.*, 469 F. App'x. 332, 337 (5th Cir. 2012)). "This proof may consist of a combination of evidence of temporal proximity, statements indicating hostility for engaging in a protected activity, and other case-specific evidence that suggests that the employer's articulated reason is not true." *Id.* (citing *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 409 (5th Cir. 1999) ("Indeed, the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.")). Rivera does not allege that Wyndham made any "statements indicating hostility for engaging in protected activities." Instead, Rivera relies on the following evidence as proof of pretext: (1) Rivera's alleged good performance; (2) Wyndham's alleged failure to follow normal procedure; and (3) the temporal proximity between exercising her protected right and her termination.

### (1) Evidence of Rivera's Good Performance

In examining retaliatory motive in the pretext analysis, the inquiry is limited to whether Wyndham believed in good faith that Rivera's performance issues had occurred and were the basis for her termination. *See Bryant v. Compass Group USA*, 413 F.3d 471, 478 (5th Cir. 2005) (holding that "[m]anagement does not have to make proper decisions, only non-discriminatory ones"); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue."). The critical

inquiry focuses on the evidence upon which Wyndham relied upon in deciding to terminate Rivera. Therefore, the parties' disagreement over how well Rivera performed her job is not evidence that Matos's decision to terminate her employment was premised on unlawful retaliation.

Wyndham referred to a number of specific documents that Matos relied upon in reaching its decision to terminate Rivera. Rivera has contested the criticism contained in many of these documents and has attempted to explain why it was unreasonable for Wyndham to rely upon them in reaching its decision to terminate her. Dkt. 24 at 25-29. However, the question of whether or not the evidence of Rivera's poor performance was inaccurate or unfair is irrelevant for purposes of examining retaliatory motive in the pretext analysis. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

The only piece of evidence that lends any support to Rivera's claim that Wyndham was pleased with her job performance is the personnel action form that states that Rivera would receive a 3% merit increase in 2014. Dkt. 24, Ex. 3 at 16. However, this evidence is unreliable given that the document allegedly granting the raise refers to Rivera as a "Low Contributor," Alfredo Matos has clarified that "Rivera did not receive a salary increase in 2014 on account of her 'low contributor' performance rating" (Dkt. 25, Ex. 1 at 3-4), and Wyndham produced a business record which states that Rivera's 2014 salary was not increased (Dkt. 25, Ex. 1 at 2).

Rivera additionally tries to argue that the 2013 annual performance evaluation that was completed by Rodriguez in November 2013 was somehow evidence of her good performance. However, if anything, the work performance issues discussed in the annual review help corroborate

Wyndham's stated reason for terminating Rivera's employment. Dkt. 22, Ex. 25. As detailed in the fact section above, Rodriguez reported that Rivera needed significant improvement in almost every performance category and gave Rivera an overall rating of "Low Contributor." *Id*. at 2-8. Therefore, Rivera has not presented any reliable evidence to suggest that Wyndham lacked a good-faith belief regarding Rivera's performance issues.

### (2) Wyndham's Alleged Failure to Follow Normal Procedure

Rivera also asserts that Wyndham failed to follow its own policies by giving Rivera only one formal written warning prior to terminating her employment. Dkt. 24 at 22-23 (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005) (finding an inference of pretext where the employer violated an internal policy that an employee should be issued at least one written or verbal warning prior to termination). However, as Wyndham points out, there is no evidence of a policy where Wyndham must (or should) issue multiple warnings to employees before termination may occur. Dkt. 25 at 4. Although Rodriguez testified in his deposition that often times there will be multiple written warnings prior to termination, he also noted that a hotel employee who receives one performance write-up may not necessarily receive a second one prior to discharge. Dkt. 25, Ex. 2 at 7:5-24. In fact, at the bottom of the performance write-up, there is a warning that suggests that continuance of the improper conduct can result in termination without a further written warning. *See* Dkt. 22, Ex. 22 at 3 (stating that "[c]ontinuance of improper conduct may result in further written warning(s) and/**or** termination") (emphasis added). Accordingly, there is no evidence of an internal policy, mandatory or otherwise, of issuing multiple written warnings prior to termination.

Nor is there any evidence to support Rivera's claim that Wyndham's policy mandated that Rivera be placed in an official "corrective action plan" before termination may occur. As evidence of this alleged policy, Rivera cites to the definition section of the 2013 performance review, which

references a corrective action plan for workers that are deemed "Low Contributor[s]." Dkt. 22, Ex. 25 at 2 (stating that for low contributors, "[i]mmediate improvement is required as specified in a corrective action plan"). In any event, as discussed above, both the 2013 performance review and the performance warning set out a plan for how Rivera can improve on her performance issues. *Id*. at 11; Dkt. 22, Ex. 22 at 2. Moreover, in addition to the November 8 write-up issued to Rivera, hotel management had many documented conversations with her about her performance. *See* Dkt. 25, Ex. 3 at 6:21-10:2. (Matos's Dep.). The undisputed evidence shows that Wyndham began to coach Rivera on her performance as early as September of 2013 and continued to coach her and advise her of the need to improve until her termination in February 2014. Dkt. 22, Ex. 4 at 2-3. Therefore, even if Wyndham had some unwritten policy requiring management to place Rivera into a corrective action plan, the evidence demonstrates that she was placed in some form of a corrective action plan.

**(3) Temporal Proximity**

Because Rivera has failed to provide reliable evidence that Wyndham was pleased with her work performance or that Wyndham departed from its normal procedures, she is left with temporal proximity to show pretext. Rivera was fired five days after informing Wyndham that she would be going to the EEOC for assistance. However, the Fifth Circuit has made clear that "temporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *see also Kopszywa v. Home Depot USA, Inc.*, 620 F. App'x 275, 280 (5th Cir. 2015) ("As a matter of law, '[b]ut for' causation ... cannot be established by temporal proximity alone."). Because Rivera has failed to meet her evidentiary burden on the issue of pretext, her case must be dismissed.

## V. CONCLUSION

Rivera has failed to produce sufficient evidence to create a genuine issue of material fact as to whether Wyndham's stated reason for terminating Rivera was a pretext for retaliation. Accordingly, Wyndham's motion for summary judgment is GRANTED. Rivera's complaint is DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on March 21, 2016.

_____
Gray H. Miller
United States District Judge